Mayer *v.* Attorney-General.

LEWIS MAYER, appellant,

*v.*

THE ATTORNEY-GENERAL and others, respondents.

1. In an insolvent mutual life insurance company, the holders of policies matured either by death or the attainment of the age specified, are preferred creditors, and the holders of running policies, members, of the debtor corporation, and hence the former cannot be called on to share, *pra rata*, losses occurring after their claims matured.

2. Where, at the date of such insolvency, the risk on endowment policies had not been terminated, the holders of such policies are not creditors, notwithstanding all the premiums thereon liable to be called for, had been paid.

3. The day on which the insolvency occurred, as adjudged by the decree, fixes the time to which the several claims must be referred for adjustment, and not the date of the decree itself.

Mayer *v.* Attorney-General.

On appeal from a decree of the chancellor, reported in
*Vanatta* v. *N. J. Mut. Life Ins. Co.*, *4 Stew. Eq. 15.*

*Mr. A. Q. Keasbey*, for Lewis Mayer, cited—

*N. Y. Life* v. *Statham, 3 Otto 24; Dalby* v. *Life Assurance
Co., 15 C. B. 365 ; Trenton Ins. Co.* v. *Johnson, 4 Zab. 584;
Atlantic Mut. Life Ins. Co. Case, 16 Alb. L. J. 453 ; Holcomb*
v. *New Hope Bridge Co., 1 Stock. 457 ; Stratton* v. *Allen, 1 C.
E. Gr. 229 ; Security Life Ins. Co. Case, 11 Hun 96 ; S. C.
on Appeal, 8 Ins. L. J. 859, 2 N. J. L. J. 354 ; Mooney* v.
*British Com. Life Ins. Co., 9 Abb. Pr. (N. S.) 103 ; Albert
Life Ins. Co., L. R. (9 Eq.) 705 ; Bell's Case, L. R. (9 Eq.)
706 ; Holditch's Case, L. R. (14 Eq.) 72 ; McIver's Case, L.
R. (5 Ch. App.) 424.*

*Mr. E. Mercer Shreve*, for Josephine Wallwork and
Amanda Neff, cited—

*Mut. Ben. Life Ins. Co.* v. *Hillyard, 8 Vr. 444; Lehigh
Valley Fire Ins. Co.* v. *John Schimpf, Phila. Leg. Int., Aug.
24, 1877, 86 Pa. St. 373; Trenton Mut. Ins. Co.* v. *McKelway,
1 Beas. 133 ; Com.* v. *Mass. Mut. Fire Ins. Co., 112 Mass.
116, 119 Mass. 45; Com.* v. *Monitor Mut. Ins. Co., 112 Mass.
150 ; Conigland* v. *Ins. Co., Phill. Eq. 341; Craftsman's Ins.
Co. of N. Y.* v. *N. J. Mut. Life Ins. Co.* (*not yet regularly
reported*).

*Messrs. Cortlandt Parker* and *·R. Wayne Parker*, for Eliza
Munro and Catharine Kiley, cited-

*Bell's Case, L. R. (9 Eq.) 756; Holditch's Case, L. R. (14
Eq.) 72 ; Trenton Mut. Ins. Co.* v. *McKelway. 1 Beas. 133 ;
Com.* v. *Mass. Mut. Fire Ins. Co., 112 Mass. 116, 119 Mass.
45 ; Mut. Ben. Life Ins. Co.* v. *Hillyard, 8 Vr. 444; Ruggles*
v. *Chapman, 59 N. Y. 163 ; Jenkins* v. *Armour, 6 Biss. 312;
Kitchen* v. *Conklin, 57 How. Pr. 368.*

Mayer *v.* Attorney-General.

*Mr. Joseph Coult,* for Wm. P. Nicholas, cited—

*May on Insurance p. 684 § 548; Angell on Life and Fire Ins. § 413; Mygatt v. N. Y. Pro. Ins. Co., 21 N. Y. 65, 70, 73; Shirley v. Mut. Assurance Society, 2 Rob. (Va.) 705; Mut. Ben. Life Ins. Co. v. Jarvis, 22 Conn. 133; Waterbury v. Eagle Iron Works, 8 Paige 380; Kincaid v. Dwinelle, 59 N. Y. 548.*

*Mr. T. A. Jobs,* and *Mr. A. M. Bingham* of New York, for Anson M. Baker, cited—

*Nix. Dig. (4th ed.) 408 § 15; Rev. 191 § 80; Burnley v. Stevenson, 24 Ohio St. 474; Chew v. Brumagim, 6 C. E. Gr. 520; Weymouth v. Washington R. R. Co., 1 McArthur 19; Robert v. Hodges, 1 C. E. Gr. 299; Stat. of N. Y., 1853 ch. 463, 1862 ch. 300 § 14; Thatcher v. Turrel, 3 Dana 372, 380; LeRoy v. Globe Ins. Co. 2 Edw. Ch. 657; Taylor v. Root, 4 Keyes 335; Ainslie v. Radcliff, 7 Paige 439; Sharswood's Blackstone 465, note 25; Cross's Law of Liens 105; Kelly v. Neshannic Mining Co., 3 Hal. Ch. 579; Stratton v. Allen, 1 C. E. Gr. 233, 235; Parsons v. Monroe Mfg. Co., 3 Gr. Ch. 137; In re Daniel Sheehan, 8 Nat. Bank. 345; Andrews v. Smith, 9 Wend. 53, 54; Bates v. Lyons, 7 Paige 85; Mumford v. Stocker, 1 Cow. 178; Crawford v. Wilson, 4 Barb. 504, 524; Spauldon v. Congdon, 18 Wend. 543; Wood v. Keyes, 6 Paige 478; Campbell v. Messier, 4 Johns. Ch. 334; Wilkes v. Harper, 2 Barb. Ch. 338.*

*Mr. F. W. Stevens,* for the receiver, cited—

*Goodsell's Prin. & Prac. of Life Ins. 35; N. Y. Life Ins. Co. v. Statham, 93 U. S. 24; Holditch's Case, L. R. (14 Eq.) 72; Bell's Case, L. R. (9 Eq.) 706; People v. Security Life Ins. Co., N. Y. Court of Appeals, 1879.*

The opinion of the court was delivered by

Dodd, J.

This appeal is from an order of the chancellor directing distribution of a portion of the assets of the New Jersey

Mayer v. Attorney-General.

Mutual Life Insurance Company among certain classes of claimants. In pursuance of an information filed against the company as an insolvent corporation, on the 30th of January, 1877, a temporary injunction was issued and a receiver appointed. Afterwards, by a decree made on the 1st of May, 1877, it was adjudged that, on the said 30th of January, the company had become insolvent; that the temporary injunction previously issued, restraining the company from doing business, should be made perpetual; and that the receiver should proceed to wind up its affairs.

Petitions were subsequently submitted to the chancellor, setting up claims founded on the company's policies, and presenting the question whether any of such claims were entitled to be paid in preference to others. In the eight petitions submitted, three descriptions of policies are referred to: one, covering the whole length of natural life, insuring a sum to be paid upon death; a second, covering a limited period of years, insuring a sum to be paid upon death, if it should happen within the period limited; a third, called endowment policies, insuring a sum to be paid upon the attainment of a certain, specified age, or sooner, if death should sooner occur. The policies included in the first and second descriptions do not differ from each other in any particular affecting the question of priority now in dispute. Both cover risks to be terminated and turned into claims by the happening of death. Six of the petitions relate to such policies. Two of the petitions relate to endowments. In neither of the endowments had the risk terminated before insolvency, either by death or by the attainment of the specified age. They differed from each other only in the particular that in one case all the premiums that ever could have been required by the company if it had continued to be solvent, had been paid, while in the other case future premiums might have become payable. Policies whose risks have been ended by death, are commonly spoken of as death claims; while endowment policies, whose risks have been ended by the attainment of the specified age, are

called matured claims; but both may, without inaccuracy, be called claims on matured policies, the risks being over and the claims no longer uncertain or contingent.

By the order appealed from, claims on matured policies are directed by the chancellor to be paid by the receiver, in preference to claims founded on policies whose risks continued till insolvency, except only the special class of endowment policies on which all premiums ever requirable had been fully paid. Such excepted endowments were placed in the same category with claims on matured policies, and all were directed to be paid, not equally or *pro rata*, but, in the words of the order, "such payments to be made to said parties in the order of the death of said persons insured and the time stipulated by the company for the payment of the endowment policies."

The petitioner, Lewis Mayer, was the holder, at insolvency, of a policy on his life, which, by its terms, was to run till his death. His contention before the chancellor and in this court was against the right of the holder of any claim on a matured policy, or on an endowment, to be paid in preference to claims on policies, where, as in his case, the risk still continued. His contention was that all policy claims should be put on an equal footing; that the reserves, or, as they are otherwise termed, the unearned portions of the premiums paid and held for policies, with continuing risks, were entitled to be paid equally and *pro rata* with the claims to which preference was given by the chancellor's order.

Mayer is the only appellant. The single question raised by the appeal is, therefore, that of the priority just stated. The chancellor directs the preferred claims to be paid in a certain order of precedence among themselves. This direction, not being appealed from, is not now under review. The discrimination made by it does affect the holders of the postponed claims. As to them, no rule of distribution is laid down. In what manner they shall share, as between themselves, in any remaining assets to be distributed, is expressly reserved by the order for future adjudication.

53

I agree with the chancellor in thinking that claims founded on policies that matured before insolvency, should be preferred to claims simply for reserves. This conclusion is clearly required, I think, in a mutual company, by the difference between the character of a matured claim and the character of a policy reserve. It is in substance the difference between the claim of an outside creditor against a firm for a debt, and a claim of a member of the firm for his share of the assets invested in its business. It is true that the company, in this case, was not an ordinary partnership. It was a corporate body whose members were changing, and their liability for the company's losses was of limited extent; but as between the parties whose claims are now under consideration, the relation which the owner of a matured claim held to the corporation and to the remaining members, was, to the extent of the company's assets, the relation of an outside creditor to the partners of a firm. As partners can claim no part of the partnership assets on a settlement till the partnership debts have been paid, so here those who were members of the company when insolvency occurred, must be postponed to those who had previously become creditors, and ceased to be members. This results from the manner in which the company was organized and its business conducted.

It was a mutual company, constituted by policy-holders, in distinction from a stock company constituted by stock-holders. By its act of incorporation, approved March 19th, 1863 (*P. L. 1863 p. 395*), it was enacted "that all persons who shall insure in or with the corporation shall, while they continue so insured, be deemed and taken as members of said corporation." As such members they managed the business through their agents, the directors, whom they exclusively had the power to elect. Each member was at the same time both insurer and insured. When the risk covered by his policy was ended, either by the happening of death or by the attainment of a specified age, no insurable interest remained. The condition of being insurer and

continuing so insured no longer existed, and membership ceased. The termination of the risk and of membership effected the change in the status of the policy, from which its right to be a preferred claim is derived. Prior to such change it was entitled, as between it and the other policies, to a share in the company's re-insurance or reserve fund. By such change it became a debt owing by the company to a third party, not bound to make further payments of premiums, and not entitled to act in the management of the business. The amount of such debt was not subject, in the legitimate conduct of the business, to its risks. Before insolvency occurred, the company's assets were sufficient to pay such debts or matured claims, and also to cover the reserves on its policies. This is involved in and implied by the meaning of solvency. In that state of things the amounts of the matured claims were properly to be set apart from the reserves which were still required for the company's business of insurance, and which were legitimately embarked in its prosecution. The holders of such claims, not being members of the company when overtaken by insolvency, cannot legally or equitably be called on to share in subsequent losses *pro rata* with those who continued to be members, and under whose management the losses occurred.

This view is not in conflict with the ruling of the court of appeals of New York, in the recent case of *Security Life Ins. & Ann. Co., 11 Hun 96*, cited at the argument. The court in that case recognized the distinction between a mutual company and the company there dealt with. The holders of matured and unmatured policies were regarded in that case as alike creditors of the corporation, which was not constituted by either class of policy-holders, but was a third party to both. The same is true of the English cases to which counsel referred. In none of them were present the controlling elements which, in a mutual company like this, distinguish the two classes and make the holders of

matured claims the creditors, and the holders of running policies the members, of the debtor corporation.

This result is in harmony with the rule of distribution in the 80th section of the act concerning corporations (*Rev. p. 191*), made applicable, as far as may be, to insolvent insurance companies by the 56th section of the act concerning insurance companies (*Rev. p. 517*). The distribution in that section is, first, to creditors; second, to the preferred stockholders, and, third, to the general ones. The assets of a mutual company belong to the members, as, in a stock company, they belong to the stockholders. The reason of preference to creditors is in each case the same—the just and plain reason that the owners of the assets are the debtors, and hold the assets subject to the payment of their debts.

The right to priority of payment deduced from the foregoing considerations is not dependent on or aided by that provision of the charter relating to assessments on the company members. The words of this provision are: "That if, at any time, it shall so happen that there shall be just claims on the corporation, for losses sustained, to a greater amount than they have funds on hand to discharge, the directors shall proceed to assess such deficiency, in a ratable proportion, on the members, according to the amount of each member's insurance; provided that such assessment shall not exceed the amount of the note or obligation given by such member."

The notes given by the members in this company were for a part of the premiums named in the policies. No liability was created by the notes to pay more than the definite amounts which the terms of the policies required. Under the known proper conduct of the business, the notes of a member did not exceed at any time, while the company was solvent, the value of his policy. Unlike the notes given by members of mutual companies insuring against fire or marine risks, the notes here were not purely personal obligations, but were secured by the values of the policies

on which the notes were a lien.  The makers of the notes were borrowers from the company on the strength of their policies, which, under the proper management referred to above, were good collateral securities for the loans.  The premiums were the same in amount and in form, whether paid wholly in cash, or partly in cash and the balance by note.  Unlike the note in the fire and marine companies alluded to above, the note given for a part of the premium here did not extend membership beyond the termination of the risk, or render its maker liable to contribute for losses incurred by the company after the policy had ceased to be a risk.  The consequence is that no important significance attaches to these words of the charter in respect to the question of priority now under review.

While assenting to the correctness of the order appealed from, so far as it gives priority to claims founded on policies matured before insolvency occurred, I must dissent from that part of it which includes in the preferred class the special endowments unmatured, but on which all the premiums ever requirable had been paid.  These endowments were continuing risks—as much so in nature, though not in degree, as ordinary policies covering the full period of life.  The circumstance that no more premiums could have been required to be paid if the company had continued to be solvent, is, in this behalf, unimportant.  Premiums on the company's policies were payable in diversified ways: By one sum at the outset; by payments each year during life, or yearly for a certain limited time.  The varying methods of payment did not vary the result to the company; the present worth of such premiums at the policy's inception being the same by one method as by another. An endowment policy, whose premiums were fully paid, was a contingency still, and no more entitled to be treated as a present debt, payable in the future, than a paid-up policy, maturable only by death, at any age it might happen to come.  The ground of preference exists only in the

fact that a policy had ceased to be a contingency, and had become a fixed and definite claim.

I dissent, also, from the order in this, that the date of the decree of insolvency, instead of the date when insolvency was adjudged by the decree to have occurred, is the point of time up to which policies are allowed to have matured and the claims on them taken as preferred. The date of the decree is May 1st, 1877. It adjudges that insolvency existed on the 30th of January, preceding. Under the information then filed, the receiver was appointed, and the company became disentitled to continue its business. During the period till the date of the decree above stated, the receiver was authorized, by the order appointing him and granting the temporary injunction, to take any premiums offered on policies, and hold them provisionally as a separate fund, with a view to the possible re-establishment by the members of the company's affairs. The company was not re-established, and the premiums so taken were not used for insurance. It is an incident of the peculiar contract and relation which each member of a mutual insurance company enters into with the other members, that the injunction and judicial sequestration of the property of the corporation terminates its liability for future losses. *Commonwealth* v. *Mass. Ins. Co., 119 Mass. 51.*

For the purpose of correcting the order appealed from, by excluding from the preferred claims those founded on unmatured endowments, and by limiting the time for maturity to the 30th of January, instead of the 1st of May, 1877, there must be a reversal, but, under the circumstances, the reversal should be without costs.

Decree unanimously reversed.