COMMONWEALTH, by Insurance Commissioner, *vs.* MASSACHU-
SETTS MUTUAL FIRE INSURANCE COMPANY. George W.
Taylor, petitioner.

SAME *vs.* SAME. William Minot & others, Receivers, petitioners.

Suffolk.    June 23. — Oct. 27, 1875. —— COLT & AMES, JJ., absent.

A policy, issued by a mutual fire insurance company, insured the holder against loss
or damage by fire under the conditions and limitations expressed in the rules of
the company, and stated the undertaking of the company to be "to satisfy and
make good, from the absolute and conditional funds of the company, unto the said
assured, all the damage by fire which may happen to said real estate, within the
term aforesaid, according to the true intent and meaning of said rules. Provided,
nevertheless, that if the whole of the absolute and conditional funds of said com-
pany shall be insufficient to pay and satisfy all damages that may happen, in such
case a just average shall be made to the sufferers, and the payment to be demanded
in virtue of this policy shall be a dividend of said stock, in proportion to the sum
insured and the rate of damage." One rule required notice of a loss to be given
in a prescribed manner, and provided that "payment shall be made in thirty days
after receiving notice of the loss as above." Another rule provided that "in case
losses should happen so as to absorb the whole of the absolute fund, the president
and directors shall, within twenty days, proceed to assess on each member a sum
not exceeding double the amount by him paid by way of premium and deposit,
and the same assessment publish in two or more newspapers in Boston. They
shall then collect the said assessment without delay ; and in thirty days after such
notice shall have been given, they shall actually proceed in due form of law against
each delinquent, and thereby be completely exonerated. In case of neglect, they
may be subjected to the penalty expressed in the act of incorporation. In case of
neglect to pay said assessment, such delinquent's policy or policies shall cease and
determine until payment is made, with interest, and such reasons given for the de-
lay as shall be satisfactory to the president and directors." *Held,* that after losses
which absorbed the absolute funds of the company and required an assessment
upon the contingent liability of the members, the insured who had sustained losses
were not entitled to interest thereon out of the surplus remaining from the assess-
ments after the payment of the losses.

A mutual fire insurance company is not liable for any loss which occurs after the
appointment of receivers and the judicial sequestration of all its property; and
where, upon the happening of losses which absorb the absolute fund of the com-
pany and require an assessment upon the contingent liability of the members, the
fund accruing from the assessment is more than enough to pay for the losses, the
receivers are not entitled to retain any part of the surplus for the purpose of meet-
ing future losses.

Where the losses upon policies issued by a mutual fire insurance company are so
large as to exhaust the absolute fund of the company, and an assessment is made
in accordance with the rules of the company, upon the contingent liability of the
members, which proves to be more than sufficient to pay the amount required, the
surplus is, in the absence of any requirement in the rules of the company that it
shall be devoted to other uses, to be repaid to the members by whom the assess-
ment was paid.

THE FIRST PETITION was by George W. Taylor, filed September 29, 1873, alleging that on July 1, 1866, the defendant company insured him against loss by fire on his house and ware-room, in Boston, for the term of seven years ; that on June 18, 1873, the said buildings were partially destroyed by fire ; that the amount of the loss was $997, and that proof thereof was duly made.

The prayer of the petition was that William Minot, Charles B. Cumings and Lemuel Shaw, who had been appointed receivers of the defendant company, be ordered to appear and show cause why the dividends on the amount due the petitioner under said policy of insurance, on account of said loss, should not be paid to him. Annexed to the petition was a copy of the policy, on which were printed the rules of the defendant company. So far as these are material, they appear in the opinion.

The answer of the receivers admitted the facts stated in the petition ; and alleged that on November 27, 1872, on application of the insurance commissioner to this court, the company was restrained by injunction from further proceeding with its business ; that on December 7, 1872, it appearing to the court that the company was insolvent, said receivers were appointed, with authority to take possession of the property and effects of the corporation, and to collect the debts, to pay all debts due from said corporation, if the funds in their hands should be sufficient, and, if not, to distribute the said funds ratably among the creditors, and to distribute the residue, after payment of said debts, to and among the persons legally entitled thereto ; and the injunction previously issued was made perpetual; that on the sixth day of December, 1872, the directors made an assessment for the payment of losses accruing prior to said date, by vote, as follows : "Whereas, members of this corporation did, during the month of November last, and on and after the ninth day thereof, sustain damage by fire over and above the existing funds of the corporation by an amount exceeding the whole liabilities of the members subject to assessment, it is therefore voted : First, that an assessment of an amount equal to two dollars for each and every dollar advanced as premium and deposit be made upon each person and company that was a member of this corporation at twelve o'clock at noon on the ninth day of November last, and that is liable for

losses occurring during said November and after said twelve o'clock at noon.   Second, that the president give notice of the above vote to each member of the corporation, and also publish notice of this assessment in two or more newspapers in Boston. Third, that the president be authorized to collect said assessments without delay, and to cancel outstanding policies on the payment of said assessments."

The answer further alleged that on April 7, 1873, the assessment above mentioned was duly ratified, confirmed and established by this court; that nearly all said policies have been formally cancelled on payment of the assessments due thereon, that notices of the assessment due on his policy were sent to and received by the petitioner on December 6, 1872, and on April 16 and July 1, 1873, and said assessment has not been paid, and that his policy has not been cancelled, unless by the acts, omissions and proceedings hereinbefore set forth; that said receivers have been ordered to pay dividends to the amount of one hundred per cent. on all claims heretofore proved and allowed against said company, and that nearly all said dividends have been paid, but no interest has been hitherto allowed or paid on said claims; that the assets in the hands of the receivers will probably be sufficient to pay said claim of said Taylor, after making all payments heretofore ordered by this court, and after paying the expenses of winding up the affairs of the company; but that there are certain other policies, the terms of which have not expired, on which assessments have not been paid, and which are not known to have been forfeited or cancelled unless by the neglect to pay said assessment and by the proceedings hereinbefore set forth.

At the hearing before *Endicott*, J., the facts alleged in the petition and answer were admitted, and the question was reserved for the full court whether on these facts the petitioner was entitled to any, and, if any, what payment on account of the claim set forth in his petition.

THE SECOND PETITION was by the receivers of the defendant company filed May 12, 1875, alleging that an assessment was levied by the directors of the company upon the members thereof, and approved by this court, to pay claims for fire losses occurring prior to December 6, 1872; that, in levying the assessment, an allowance of fifteen per cent. was made for probable bad

debts and expenses of collection ; that the receivers have collected upwards of ninety-eight per cent. of the assessment, and believe that still further collections can be made ; that they have paid from time to time, in accordance with the decrees of this court, one hundred per cent. on all said claims for fire losses, but have paid no interest on said claims ; that there will remain in their hands after the aforesaid payments, and after paying expenses and charges of collection, upwards of eighty thousand dollars , that, by the rules of the company, all claims for fire losses were payable thirty days after notice thereof ; that notice of the claims above mentioned was given (or notice thereof waived by the company,) before December 6, 1872 ; that in accordance with the vote of the directors of the company on levying 'the assessment, and under the authority of this court, the president of the company has cancelled policies outstanding at the date of the assessment, on payment thereof ; that by the by-laws of the company it is provided that policies shall cease and determine in case of neglect to pay any assessment on the same ; that there are about fifty policies which have not been formally cancelled, and which were issued for a term of years which has not yet elapsed, but on which the assessment remains unpaid.

The prayer of the petition was for the direction of the court on the following points :

1. Whether interest shall be paid on claims for the fire losses first above mentioned.

2. Whether any of said uncancelled policies above mentioned are to be treated as subsisting policies, and whether any moneys shall be reserved for the payment of losses which may hereafter occur thereon.

3. Whether any surplus remaining after making such payments and reservations as the court may decree, shall be repaid to persons who shall have paid in full the sums assessed upon them, in proportion to the amount of the assessment so paid, or shall be paid to holders of policies which were in force at the date of said assessment on account of claims for the value of the unexpired terms of said policies, or for unearned premiums and deposit money.

The case was heard and reserved by *Gray*, C. J., for the consideration of the full court upon the three questions stated in the prayer of the petition.

*J. Q. A. Brackett*, for Taylor.

*J. C. Davis*, for a creditor contending that interest should be paid on his claim.

*G. O. Shattuck*, for the receivers.

MORTON, J.    1. The directors, by their vote of December 6, 1872, made an assessment of an amount equal to two dollars for each and every dollar advanced as premium and deposit. This was the whole amount to which the members of the corporation were liable to be assessed under the charter and by-laws. So much of this amount has been collected by the receivers, that they have paid in full the principal of all the losses by fire which occurred prior to the date of the vote, and there remains in their hands a large surplus. The first question presented by their petition is whether they shall pay interest upon such losses.

The solution of this question depends upon the construction of the peculiar contract into which each member of the corporation enters with the other members.

The holder of a policy is " insured against loss or damage by fire under the conditions and limitations expressed in the rules " of the company. In each policy, the undertaking of the company is " to satisfy and make good, from the absolute and conditional funds of the company, unto the said assured, all the damage by fire which may happen to said real estate, within the term aforesaid, according to the true intent and meaning of said rules. Provided nevertheless, that if the whole of the absolute and conditional funds of said company shall be insufficient to pay and satisfy all damages that may happen, in such case a just average shall be made to the sufferers, and the payment to be demanded in virtue of this policy shall be a dividend of said stock, in proportion to the sum insured and the rate of damage."

The twenty-first rule requires notice of a loss to be given in a prescribed manner, and provides that " payment shall be made in thirty days after receiving notice of the loss as above."

The twenty-sixth rule provides that " in case losses should happen so as to absorb the whole of the absolute fund, the president and directors shall, within twenty days, proceed to assess on each member a sum not exceeding double the amount by him paid by way of premium and deposit, and the same assessment publish in two or more newspapers in Boston. They shall then

collect the said assessment without delay; and in thirty days after such notice shall have been given, they shall actually proceed in due form of law against each delinquent, and thereby be completely exonerated. In case of neglect, they may be subjected to the penalty expressed in the act of incorporation. In the case of neglect to pay said assessment, such delinquent's policy or policies shall cease and determine until payment is made, with interest, and such reasons given for the delay as shall be satisfactory to the president and directors."

The contract between each policy holder and the other members of the corporation, contained in the policy and the rules, is not an absolute contract of indemnity such as is usual in a policy issued by companies having specific capitals. It contemplates that losses are to be paid in thirty days after notice, if the absolute funds are sufficient for that purpose; but if they are insufficient, it only requires that the insurers shall make an assessment according to the twenty-sixth rule, for the purpose of paying them in full, or in part, if the whole funds are not sufficient to pay in full. If the corporation, through its officers, proceeds to make an assessment in accordance with the twenty-sixth rule, and pays the losses sustained, it does all that the contract with the insured requires of it. There is no laches or neglect to perform the contract which renders it liable to pay interest as damages for the detention of the money of the insured beyond the time when it is payable by the contract.

The provision of the twenty-first rule, that payment of losses shall be made in thirty days after notice, cannot apply to losses which make it necessary to resort to the contingent fund, because it is clear that it is not contemplated by the twenty-sixth rule that assessments can be made and collected within the thirty days. We are of opinion, therefore, that, upon the fair construction of the contract contained in the policy and rules of the company, where losses occur which absorb the absolute funds and require an assessment upon the contingent liability of the members, the insured who have sustained losses are not entitled to interest thereon. It follows that the receivers cannot pay interest upon the losses which occurred before the assessment was laid.

2. It appears that there are about fifty policies which have not been formally cancelled, and which were issued for a term of

years which has not yet elapsed, but on which the assessment remains unpaid ; and the second question presented by the petition of the receivers is, " Whether any of said uncancelled policies are to be treated as subsisting policies, and whether any money shall be reserved for the payment of losses which may hereafter occur thereon.

The proceedings under the statute are in the nature of proceedings in insolvency, the object of which is to close up the affairs of the corporation as speedily as possible. This object would be defeated if the fund in the hands of the receivers is liable for future losses, for the fund could not be distributed until the longest policy had expired by lapse of time. The decrees of the court perpetually enjoining the corporation from further proceeding with its business, and sequestering all its property, deprive the corporation and its officers of the power to provide for any future losses. Each holder of a policy is a member of the corporation, and as such has notice of and is affected by the injunction. It is an incident of the peculiar contract and relation which each member of a mutual insurance company enters into with the other members, that the injunction and judicial sequestration of all the property of the corporation terminates its liability for future losses.

For these reasons, without considering other grounds of objection, we are of opinion that the funds in the hands of the receivers are not liable to pay any losses which might occur after the judicial sequestration of the property of the company, and therefore that no part of the fund should be retained for the purpose of meeting such losses.

3. The third question is, whether the surplus in the hands of the receivers should be repaid to persons who have paid in full the sums assessed upon them, or shall be paid to holders of unexpired policies on account of claims for the value of unexpired terms or unearned premiums.

The twenty-fifth article of the rules provides that " the absolute fund of the company shall be and hereby is appropriated to the payment, 1st, of expenses ; 2d, of losses by fire ; 3d, of returns of premiums and deposits, and of dividends on policies expired." The twenty-sixth article, above quoted, provides that, in case losses should happen so as to absorb the absolute fund,

an assessment shall be made upon the members. Under this provision, the liability to assessment is measured by the amount of the just claims for losses for which the company is then responsible. Neither this nor any other provision of the rules or of the contract authorizes an assessment for the purpose of paying the value of unexpired policies or unearned premiums. *Commonwealth* v. *Massachusetts Ins. Co.* 112 Mass. 116. *Commonwealth* v. *Mechanics' Ins. Co.* 112 Mass. 192.

The surplus in question results from the fact that the directors made an assessment larger than was necessary for the purposes for which an assessment was authorized. The payments of the excess were required and made under a mistake of fact, and we are of opinion that such surplus should be repaid to the members who have thus paid more than they were required by law to pay.

A decree is to be entered accordingly upon the petition of the receivers for instructions, and the petition of George W. Taylor is to be dismissed. *Decrees accordingly.*