*In re* MINNEAPOLIS MUT. FIRE INS. CO., (*Insolvent.*)

Argued Jan. 25, 1892.   Decided April 8, 1892.

**Laws 1885, Ch. 180, Construed.**—By Laws 1885, ch. 180, "millers' and manufacturers' mutual insurance companies," organized under Laws 1831, ch. 91, having the specified amount of "capital," were authorized to enter into contracts of simple "all cash" (not mutual) insurance to the limited extent specified.

**Policy of Insurance Construed.**—A policy in the ordinary form of such contracts *held* to be a contract of simple (not mutual) insurance.    The holder did not become a *member* of the company, and upon the termination of the policy by insolvency proceedings, the right of the holder to a repayment of the unearned premium is not inferior to the claims of other policy holders who have suffered loss by fire.

**Premium Notes Assessable.**—The premium notes of members of the corporation are subject to assessment to pay such unearned premiums.

Appeal by Albert M. Powell, M. E. Campbell, and others, creditors of the Minneapolis Mutual Fire Insurance Company, (Insolvent,) from an order of the District Court, Hennepin County, *Hicks*, J., made September 14, 1891, allowing their claims conditionally and subject to other prior claims against the insolvent company.

This Insurance Company was organized under Laws 1881, ch. 91, authorizing the formation of Millers' & Manufacturers' Mutual Insurance Companies.    After Laws 1885, ch. 180, was enacted, it

did business also on the "*all cash*" plan, and issued policies in the usual form used by stock companies. It was on December 18, 1890, in an action brought by Benjamin F. Nelson, adjudged insolvent, under 1878 G. S. ch. 76, and Charles Shandrew was appointed receiver of its property. On his death, February 9, 1891, James T. Wyman was appointed in his stead. Powell and the other appellants presented to Wyman their claims for allowance and payment out of the assets. He rejected the claims, and they applied to the District Court for an order directing the receiver to allow the claims and pay dividends thereon the same as to other claimants. On the hearing the receiver and the claimants stipulated as to all the facts pertinent to these claims. The questions arising thereon were argued in the trial court on September 12, 1891.

Under Laws 1885, ch. 180, the Insurance Company conducted its business on both the mutual and the "all cash" plan. When a policy was issued upon the all cash plan it contained a provision that it might be canceled at any time, at the request of the insured or at the will of the company, upon five days' notice, and if canceled, or if the policy became void for any cause, the unearned part of the premium should be returned. The claims of Powell and the other appellants were for such unearned premiums upon "all cash" policies in force December 18, 1890, and which were canceled by the judgment of that date, dissolving the corporation and appointing a receiver of its effects.

On September 14, 1891, that court filed its decision adjudging that all the holders of policies of insurance in the company, including the holders of policies issued on the "*all cash*" plan, were members of the company; that the claims of Powell and others for unearned premiums on the canceled "all cash" policies should be allowed, but upon the condition that they should not be paid until after all expenses of the receivership and all claims for losses by fire had first been fully paid, and upon the further condition that no assessment should be made on the premium notes or policy obligations, to pay these claims. From that order Powell and the other claimants appealed to this court to have the order modified by striking out the conditions.

*Fletcher, Rockwood & Dawson,* for the claimants appellants.

This case involves the rights and relations of the holders of policies of insurance issued by this company. These policies are of two kinds, —policies issued on the mutual plan, and policies on the all cash plan. Policies on the mutual plan contain provisions whereby the insured becomes a member of the company, and entitled to share in the profits. Policies on the all cash plan contain no mutual features, and are of the usual form issued by stock companies. This form is regulated by the Insurance Commissioner under the Statute, and is known as the Minnesota Standard Policy. Laws 1889, ch. 217. These policies were paid for in cash when they were issued, and by them the insured acquired no rights except the right to indemnity for loss by fire. The cancellation of the outstanding all cash policies by the order of court raised claims against the company for unearned premiums on such policies. These claims were disallowed by the receiver; they were allowed by the court below, but their allowance was qualified. Their payment was postponed until all other claims and losses and expenses had been paid. The court held, further, that no funds raised by assessment on mutual policies could be applied to the payment of these claims, and that no assessment on mutual policies could be made to raise funds to pay these claims. The reasons given for this position were that the all cash policy holders are members of the company, and that mutual policy holders cannot be assessed for any purpose except to pay losses and expenses.

The appellants claim that the all cash policy holders are not members of the company; that the premium notes and policy obligations of the mutual policy holders are the capital stock of the company; and that appellants are entitled to be repaid their unearned premiums, by assessments upon mutual policy holders, if necessary. *Taylor* v. *North Star Mut. Ins. Co.,* 46 Minn. 198.

The contract between the company and those insured on the all cash plan has no mutual feature. By it the insured acquired no voice in the management; no interest in the profits; no liability for the losses of the company. Some one or more of these is necessary to make a mutual policy, and, unless the policy have the principle of mutuality, the insured is not a member. Wood, Ins. § 538; *Illinois Fire Ins.*

*Co.* v. *Stanton,* 57 Ill. 354; *Spruance* v. *Farmers' & Merchants' Ins. Co.,* 9 Colo. 73.

It must be admitted that there are decisions which appear to contradict this proposition, but in some the contradiction is only apparent, and in others the arguments are without force and the conclusions illogical. The cases cited are as follows: *Schimpf* v. *Lehigh Val. Mut. Ins. Co.,* 86 Pa. St. 373; *Union Ins. Co.* v. *Hoge,* 21 How. 35; *Mygatt* v. *New York Protection Ins. Co.,* 21 N. Y. 53; *State* v. *Manufacturers' Mut. Fire Ins. Co.,* 91 Mo. 311; *Ohio Mut. Ins. Co.* v. *Marietta Woolen Factory,* 3 Ohio, St. 348.

Mutual companies with the power to write stock policies have been formed in other states. *Illinois Fire Ins. Co.* v. *Stanton,* 57 Ill. 354; *Hays* v. *Lycoming Fire Ins. Co.,* 98 Pa. St. 184.

*Keith, Evans, Thompson & Fairchild,* for the receiver respondent.

The assets of the company, outside of premium notes and policy obligations, amount to less than $4,000, not enough, we may safely assume, to pay the necessary expenses of the receivership. The liabilities of the company, exclusive of the claims of the nature of those held by appellants, amount to about $60,000. If these claims for unearned premiums are to be paid at all, such payment must be made entirely out of the proceeds of assessments on premium notes and policy obligations. The amount of claims for unearned premiums is about $25,000. By policy obligations we mean the liability assumed by members who accept a mutual policy containing the obligation to pay a premium annually, and, in addition thereto, such sums, at such times, in such manner, and by such installments, as the directors of the company assess and order pursuant to its charter and by-laws.

The only effect of the act of 1885, ch. 180, was to enlarge the powers of mutual companies. It does not change the character of companies organized under the original act. The intention of the Legislature must have been simply to give to the company the right to issue policies for all cash premiums without changing the character of the insurance thus effected. The member insuring on the all cash plan was permitted to put his cash in the place of a pre-

mium note, by this means paying all his assessments in advance. The all cash policy holders were members of the company as fully as those insured on the original plan. For at least a year prior to the insolvency of the company but two forms of fire policies could be issued in this state, as only two forms have been provided by the insurance commissioner under the provisions of Laws 1889, ch. 217. The one is the usual form issued where the insurance is upon a cash basis rather than upon the premium note plan. The other form of policy is the same as the first, except that to it are appended mutual policy conditions.

The leading cases in this country on the subject are *Union Ins. Co.* v. *Hoge,* 21 How. 35; *Mygatt* v. *New York Protection Ins. Co.,* 21 N. Y. 52; *Ohio Mut. Ins. Co.* v. *Marietta Woolen Factory,* 3 Ohio St. 348; *Schimpf* v. *Lehigh Val. Mut. Ins. Co.,* 86 Pa. St. 373; *White* v. *Haight,* 16 N. Y. 310.

We admit that a mutual insurance company might be formed to insure both its members and strangers under a statute permitting it, (Wood, Ins. § 538,) but we deny that this company was formed for such purpose, or did insure any who were not its members. The intention to permit such a company to insure strangers must clearly appear. In this case the contrary intention clearly appears. *Com.* v. *Massachusetts Mut. Fire Ins. Co.,* 112 Mass. 116; *Com.* v. *Mechanics' Mut. Fire Ins. Co.,* Id. 192; *Com.* v. *Massachusetts Mut. Fire Ins. Co.,* 119 Mass. 45.

DICKINSON, J. The above-named corporation was organized under Laws 1881, ch. 91, entitled "An act authorizing the formation of millers' and manufacturers' mutual insurance companies." After the passage of the statute authorizing such corporations having a specified amount of capital to "assume risks on the all-cash plan," (Laws 1885, ch. 180,) the corporation conducted its business of insurance on both the "mutual" and the "all-cash" plans, so called. Its by-laws contemplated this, and contained provisions respecting insurance both by "participating or mutual policies" and "nonparticipating or cash policies." In distinct terms, which need not be here recited, they declared that all persons holding policies issued on the

"premium note or participating plan" should become members of the corporation, entitled to all its benefits, and liable for all its losses and expenses to the extent of their premium notes; and that the holders of "nonparticipating" policies should pay their premiums in cash, should not be members of the corporation, and should not be entitled to share in its profits, nor liable for its losses, expenses, or debts. The policies issued for mutual insurance, where premium notes were given by the insured as part of the consideration for the insurance, were different in their forms and provisions from those issued where the entire premium was paid in cash. The policies of the latter kind were in the usual form of policies issued by stock insurance companies. They provided for the repayment of unearned premiums on the usual conditions, and contained none of the distinctive features of mutual insurance; while the former stated that the holders of such policies became members of the corporation, and contained various provisions relating to the right of such policy holders to share in the profits of the company, and to their liability for losses and expenses.

In 1890, in an action against the corporation, prosecuted in accordance with the provisions of 1878 G. S. ch. 76, the corporation was adjudged to be insolvent, a receiver was appointed, its assets sequestered, and it was enjoined from the further prosecution of its business. This appellant Powell acquired by assignment the claims of several holders of "all-cash" policies against the corporation for premiums unearned at the time when by these sequestration proceedings the contracts of insurance were terminated. His claim for the repayment of the unearned premiums was disallowed by the receiver. On appeal to the district court, it being considered that the holders of such policies became members of the corporation, it was decided that, while the claims should be allowed, their payment should be postponed until all claims for losses and expenses had been fully paid, and that they should not be paid out of the proceeds of assessments made upon the premium notes of the members. The claimant then appealed to this court.

By the insolvency and sequestration proceedings all outstanding policies were in effect canceled,—*Taylor* v. *North Star Mut. Ins. Co.*,

46 Minn. 198, (48 N. W. Rep. 772,)—and the policy holders whose rights passed by assignment to the appellant became creditors of the corporation to the extent of the unearned premiums. It may be conceded that, if the holder of an "all-cash" policy is to be deemed to have been a *member* of the corporation, entitled to participate in its management and to share in its profits, his claim as a creditor should be postponed to the just demands of those not standing in any such relation. But if his relations with the corporation were only those of one merely contracting with it for insurance, then his right to the repayment of the unearned premium is not inferior to the rights of other creditors.

It should be admitted that the mere fact that the law or the charter of a mutual insurance company permits insurance to be effected on the basis of a payment of the full consideration or premium therefor in cash when the policy is issued does not alone determine that the transaction is not one of mutual insurance, or that the insured does not thereby become a member of the corporation. Doubtless a mutual insurance company may be authorized to receive the full premium in cash, and no contingent liability will rest thereafter on the assured, and yet the transaction be in all essential particulars one of mutual insurance. But we are to consider what was the nature and effect of a contract of insurance under the statutes above cited, and as evidenced by a policy in the ordinary form of a contract of insurance, not containing any of the features peculiar to mutual insurance, and for which the whole premium was paid in cash.

The act of 1881 (section one [1]) authorized a specified number of persons, being actual residents of this state, engaged in the business of milling or manufacturing therein, and owning property of a specified amount, to form themselves into a corporation for the purpose of insuring, "upon the plan of mutual insurance," mills, manufactories, elevators, and the contents and products thereof.

Section twelve (12) of this law provides that "every person insured by such corporations shall pay at the time of receiving his policy such sum in money, and give his premium note for such further sum, as may be required; and every person effecting insurance in

any company organized under this act  *  *  *  shall thereby become members of such corporation during the period of insurance, and shall be bound to pay for losses and such necessary expenses as may accrue in the management of such company, in proportion to the amount of such premium note."

By the law of 1885, above referred to, it was enacted that whenever the capital of any company organized under the act of 1881 should amount to $200,000, of which not less than $40,000 should be actual funds, "such company may assume risks on the all-cash plan, and issue policies against loss or damage by fire or lightning on any property, real or personal, to an amount not exceeding five per centum of its capital."

The construction of this latter act, which seems to be most in accordance with the apparent intention of the legislature, is that it permitted such mutual insurance companies to enter into contracts of insurance to the extent specified, based upon their accumulated capital, and into which contracts the peculiar features of mutual insurance, as specified in the prior law, need not enter.

· Perhaps the corporation might make contracts of insurance on the all-cash plan in such terms that the assured would become members of the corporation, entitled to share in its profits and participate in its management.    We only consider at present that it was *permitted* to make contracts of insurance, just as ordinary stock companies usually do.

The act of 1885, which was not in terms an amendatory law, was not intended merely to so modify the terms of the prior act as to provide that in the transactions of mutual insurance by corporations organized under that prior law the entire premium might be paid at once in cash, in place of the combined cash and premium note system, specified in the earlier statute.    If the act of 1885 did authorize this, it certainly went further.    It contains important provisions, having no natural or reasonable relation to such a purpose, but which in ordinary and unqualified terms seem to confer upon such mutual insurance companies the right to enter into ordinary contracts of insurance in the manner in which such contracts are usually made.    It is required as a condition that the company shall have acquired a

"capital" amounting to $200,000, which must include at least $40,-000 in "actual funds," (which means cash premiums, investments, and accumulations on hand, and is distinguished from the premium notes, which are designated the "contingent fund.") Laws 1881, ch. 91, § 14. Such a requirement is in accordance with the policy of the state, manifest in our general laws, imposing like conditions on joint stock insurance corporations, and rests upon the obvious purpose of securing policy holders who merely contract with the corporation for insurance, relying upon its financial responsibility; they being in no other respect interested in the corporation or in its management.

Again, the insurance which such companies were specially authorized to assume by the act of 1885 is in at least two important respects different from that authorized by the act of 1881, under which this corporation was created; and there is no reason to suppose that the authority conferred by the earlier act has been in these respects modified. The insurance specified in the act of 1885 is limited to an amount not exceeding five per cent. of the capital. No such limit is fixed to the business of mutual insurance under the act of 1881. The act of 1881 only allows persons interested in milling or manufacturing to become incorporated, and only permits insurance upon property employed in such business. The act of 1885 permits insurance "on the all-cash plan" on *any* property, real or personal. These distinctions afford strong reason in support of the conclusion that the act of 1885 was intended to allow corporations organized for mutual insurance under the earlier act to add to that business, to a limited extent, the business of general fire insurance, based on the credit and accumulated capital of the corporation, and not on the mutual plan.

To these considerations it is to be added that the simple, unqualified language in which the authority is expressed in the act of 1885 points to the same conclusion. Such mutual insurance companies "may assume risks on the all-cash plan, and issue policies against loss or damage by fire or lightning on any property, real or personal, to an amount not exceeding," etc.

If the corporation was permitted by the act of 1885 to enter into such simple contracts of insurance, it did so in the cases here pre-

sented. The policies were only contracts of insurance, and contained nothing creating any other relation between the corporation and the policy holders than that of insurer and insured. It is entirely clear that the corporation intended and understood these contracts to be of that character, and there is no reason to suppose that the intentions of the assured were not the same.

This construction of the statutes and of the contracts under consideration leads also to the conclusion that the premium notes of the members of the corporation, which constitute its "contingent fund," may be resorted to, if necessary, to pay the unearned premiums on policies of simple (not mutual) insurance, whose holders sustain no other relation to the corporation than that of parties who had thus contracted with it. Such notes constitute a part of the "capital" of the corporation, (section 14, act 1881,) and comprise a part of the "capital" required by the act of 1885 to be held by the company as a condition of its right to engage in this kind of insurance. They are to be deemed a part of the fund upon the credit of which such contracts of insurance are entered into. No reason is apparent why such an accumulation of "capital" should be required as a condition of entering into such contracts of insurance if that capital is not legally liable to meet the obligations thus created; nor do we see any distinction in this respect between the express contract obligation to pay for losses by fire and the obligations expressed in the same contracts to repay unearned premiums.

A claim based upon certain checks is referred to in the briefs, but we do not discover that the court below ruled upon it, nor that a ruling was sought. We therefore do not consider it.

The order of the district court allowing the claim will be modified by striking out the condition specified as the order of payment, so that the allowance shall be without qualification.

An application by the Receiver for a reargument was denied on April 25, 1892.

(Opinion published 51 N. W. Rep. 921.)