CHRISTOPHER H. SMITH, Insurance Commissioner. and Another v. NATIONAL CREDIT INSURANCE COMPANY and Others.[1]

June 24, 1896.

Nos. 10,122, 10,123, 10,124, 10,125, 10,126—(312, 313, 314, 315, 316).

**Finding Sustained.**
    *Held*, the court below did not err in allowing the claim of the plaintiff policy holder.

**Credit Insurance—Assignment by Insurer for Benefit of Creditors— Policy Construed—Unearned Premium.**
    The defendant insurance company was engaged in the business of insuring or indemnifying mercantile concerns against "excess losses" caused by the failure or insolvency of customers to whom such concerns had made sales on credit, which excess losses were ascertained by deducting from the actual losses 15 per cent. thereof, and also one per cent. of the total year's sales, to be not less than a stipulated amount. The firm of A. & M. took out such a policy, to run for one year, in which it was stipulated that the year's sales on which the one per cent. was to be computed should not be less than $90,000. When the policy had run ten months and seven days the insurer, being insolvent, made an assignment for the benefit of its creditors. *Held*, such assignment terminated the policy. During the ten months and seven days which the policy ran, the total amount of sales of the insured was $75,000, and no more. For the purpose of determining the excess loss, *held*, the one per cent. should be computed on this amount, and not

1 Reported in 68 N. W. 28.

on the $90,000 aforesaid. *Held*, further, the insured were also entitled to recover back the unearned premium for the balance of the year after the assignment.

**Same—Losses after Assignment—Funds in Hands of Insurance Commissioner.**

B. took out a similar policy, which had run but a part of the year for which it was taken out when the insurer assigned as aforesaid. During this time, B. did not suffer a sufficient amount of loss to enable him to recover for the same under the policy; but, during the whole year for which the policy was issued, he did. *Held*, he is not entitled, as against the funds in the hands of the insurance commissioner, deposited under G. S. 1894, § 3332, to treat the insurer as a going concern for the balance of the year, so as to recover for losses occurring subsequent to the assignment.

**Same—Recovery of Premium Where no Loss.**

The D. corporation took out a similar policy, which ran also but a part of the year, when the insurer assigned as aforesaid. During this time the insured suffered no loss. *Held*, it was not entitled to rescind the contract and recover back the whole premium paid, and was only entitled to recover back the unearned premium for the balance of the year subsequent to the assignment.

**Same—Proof of Loss.**

The policy of the A. Co. ran the full year for which it was issued, and nine days thereafter the insurer assigned as aforesaid. By the terms of the policy the insured was barred from recovering on the policy unless it made final proof of its year's losses within 30 days after the expiration of the year, which it failed to do. *Held*, the assignment was a breach of the contract, and the insured was entitled to recover on a quantum meruit without furnishing such proof of loss.

**Same—Unearned Premium—Funds in Hands of Commissioner.**

Policy holders having claims for unearned premiums are entitled to participate in the funds in the hands of the insurance commissioner.

Appeal by each of the parties to the action from an order of the district court for Hennepin county, Belden, J., denying motions for a new trial. Affirmed.

*Fletcher, Cairns & Rockwood*, for appellant the Kentucky Jeans Clothing Company.

The creditors of the company who come within the definition of the words "policy holders" as used in G. S. 1894, § 3332, have a vested right in the fund as a security to the exclusion of all other creditors of the

company. Lancashire Ins. Co. v. Maxwell, 131 N. Y. 286, 30 N. E. 192. The term "policy holders" in the statute means those between whom and the company the relation of insured and insurer exists; and when that relation ceases, the right to make any claim to the fund deposited in accordance with the statute ceases. That relation ceases when the company becomes insolvent. Taylor v. North Star Mut. Ins. Co., 46 Minn. 198, 48 N. W. 772; In re Minneapolis Mut. F. Ins. Co., 49 Minn. 291, 51 N. W. 921. The uniform rule is to allow for a return of the unearned premium. It is an allowance for money for which no consideration is received and depends upon the legal fact of the termination of the policy. People v. Security L. I. & A. Co., 78 N. Y. 114. Under the terms of the policy, which are controlling, no allowance can be made as for a loss until the full term of the policy has elapsed. The only practical and equitable method is to select the point of time of legal insolvency from which to adjust the respective rights of all the creditors among themselves. The only other permissible point of time would be the date of the commencement of this action. Taylor v. North Star Mut. Ins. Co., supra; Commonwealth v. American L. Ins. Co., 162 Pa. St. 586, 29 Atl. 660. Proof of loss, as provided by the policy, is necessary.

*John F. Byers*, for appellants Allen & Marvin.

The company being insolvent, all policy holders are creditors of the company to the amount of unearned premiums. This court has adopted the general rule in making such unearned premiums the measure of damages for the breach of its contract on the part of the company. Taylor v. North Star Mut. Ins. Co., 46 Minn. 198, 48 N. W. 772; In re Minneapolis Mut. F. Ins. Co., 49 Minn. 291, 51 N. W. 921. Losses occurring after the insolvency of the company cannot be treated as claims against it. Taylor v. North Star Mut. Ins. Co., supra; Doane v. Milville Mut. M. & F. Ins. Co., 43 N. J. Eq. 522, 11 Atl. 739; Dean's Appeal, 98 Pa. St. 101; Commonwealth v. Massachusetts Mut. F. Ins. Co., 119 Mass. 45. No loss under the policy can occur until the losses incurred in the business exceed the percentage stated upon the total amount of business to be done within the term of the policy. The equities are to be determined as they exist at the date of the insolvency of the company, which is the date upon which it made its assignment. St. Paul & M. Trust Co. v. Leck, 57 Minn. 87, 58 N. W. 826.

*Rea, Hubachek & Healy*, for appellants Brown, Detroit Copper & Brass Rolling Mills, and Acme Worsted Company.

The distribution of the fund should not be governed by the rules laid down in insolvency cases, for the reason that the fund is not subject to the assignment in insolvency. The fund was deposited with plaintiff before the assignment, pursuant to G. S. 1894, § 3332, "in trust for the benefit of all policy holders," and hence did not pass by the assignment. To the extent of this fund, the company may be treated by its policy holders as still a going concern, and the policy holders may elect to treat their policies as in force, and recover such loss as may accrue at their termination; or they may treat the policy as broken by the assignment and recover back the whole premium. If the policy holder elects to treat his policy as in force, he is entitled to share in the fund to the full extent of the loss; if he elects to treat the policy as broken, he is entitled to recover back the whole premium. The contract of insurance is entire and not severable. Nelichka v. Esterly, 29 Minn. 146, 12 N. W. 457; Kohn v. Fandel, 29 Minn. 470, 13 N. W. 904; McGrath v. Cannon, 55 Minn. 457, 57 N. W. 150.

*Victor J. Welch* and *Henry Conlin*, for appellant Hayne, Receiver.

The policy holders are all creditors of the insolvent company. State v. Security Life Ins. Co., 71 N. Y. 114. The effect of an adjudication of insolvency of an insurance company is to terminate all contracts of insurance. Taylor v. North Star Mut. Ins. Co., 46 Minn. 198, 48 N. W. 772.

*Fifield & Fifield* and *Henry J. Fletcher*, for sundry policy holders.

CANTY, J. The defendant National Credit Insurance Company is a corporation which was engaged in the business of insuring and indemnifying business men and mercantile concerns against "excess losses"; that is, losses beyond a certain per cent. or amount of loss incurred in their business by reason of the failure or insolvency of customers to whom they sold goods on credit. The defendant company was organized under the laws of this state in 1891, and amended its articles several times during the years 1892, 1893, and 1894. On September 10, 1895, being then wholly insolvent, it made an assignment,

under the insolvency law of 1881,[2] to the defendants Hayne and Fuller, for the benefit of its creditors. Shortly after its organization, the defendant company deposited with the insurance commissioner of this state, for the security of the policy holders, pursuant to the statute, certain bonds, stocks, and other securities, of the aggregate face value of $100,000.

This action is brought by the insurance commissioner and one of the company's policy holders, as joint plaintiffs, to have its assets in the hands of the insurance commissioner and its assets in the hands of its said assignee marshaled and distributed among its creditor policy holders. In the court below the parties brought on for hearing, and for allowance or disallowance, the five claims of five such creditors, each claim belonging to a different class, and stipulated the facts as to such claim, for the purpose, it would seem, of testing the respective rights of the different classes. The court below allowed each of these claims for some amount, and from an order denying a new trial all parties appeal.

1. The first of these claims is that of the plaintiff the Kentucky Jeans Clothing Company. It is found by the court below that all of the allegations of the complaint are true, from which it appears that the clothing company held a policy (or bond of indemnity) which ran for one year, and the year had expired several months before the insurance company failed; that the clothing company suffered losses for which, under its said policy, it was entitled to be indemnified in the sum of $1,801; and that this was the amount for which its claim was adjusted and allowed by the insurance company itself before its failure. The court allowed the claim for the same amount, and no reason is suggested for disturbing that allowance.

2. The next claim is that of Allen & Marvin, as to which it is stipulated as follows:

"It is stipulated as to the defendants Allen & Marvin that a policy similar to the one in the complaint was issued to them on November 3, 1894, to run one year, for which they paid a premium of $145, by which said defendants were insured to an amount not exceeding $5,000, to cover losses in excess of one per cent. of not less than $90,000 annual sales and deliveries; that the conditions of said bond were in all other respects identical with those men-

2 Chapter 148.

tioned in the complaint; that prior to the insolvency of the insurance company the defendants sold and delivered goods, within the terms of the policy, to the extent of $75,000, and suffered losses upon such sales to the amount of $1,535. Due notices of said losses were given to the company, and a final proof thereof was duly served upon the assignees of the company on December 1, 1895."

By reference to the policy set out in the complaint, it would seem that the Allen & Marvin policy provides that if they "suffered losses over and above one per cent. of not less than $90,000 annual sales and deliveries made during the period" of the policy, the insurance company "will indemnify" them "against such excess losses, not to exceed the sum of $5,000, save such sum or sums as shall be deducted therefrom as hereinafter provided." The policy further provided: "Fifteen per cent. shall be deducted from the total gross losses as covered by this bond [policy], in consideration of which said losses to remain the property of said second party."

The policy did not run a year, or any longer than ten months and seven days, before the insurer failed, and made an assignment for the benefit of its creditors. The court held that such assignment canceled the policy for the balance of the time it had to run, and that there was due Allen & Marvin $21.35 as unearned premium, and was also due them "the further sum of $1,535.00, less fifteen per cent. thereof, and less the further sum of $900, being one per cent. of not less than $90,000 annual sales"; leaving as the sum so due $404.75, which, with the $21.35, amounts to $426.10.

Counsel for Allen & Marvin make no objection to this, but content themselves with objecting to the orders of the court as to some of the other claims. However, counsel for other creditors having claims similar to that of Allen & Marvin, have filed a brief in which they assert that the latter claim was to be a test claim; and they assail the court's order as to the latter claim so far as it holds that, in determining the excess loss, one per cent. of the $90,000 should be deducted. Counsel contend that only one per cent. of a part of the $90,000 should be deducted, and that such part should be equal to the part of a year which the policy ran before the failure of the insurer. We cannot hold that the $90,000 should be so apportioned. Very many wholesale concerns, such as these, make a very much larger amount of sales during one part of the year than during an-

other part; and it would be unfair to them thus to arbitrarily divide the year's minimum loss, for which they are not to be indemnified.

But we are also of the opinion that the court erred in holding that, in determining the excess loss, one per cent. of the whole $90,000 should be deducted. The insolvency of the insurer, and the assignment by it for the benefit of its creditors, had the effect of canceling the policy. 1 Wood, Ins. § 147. See, also, In re Minneapolis M. F. Ins. Co., 49 Minn. 291, 51 N. W. 921; Taylor v. North Star Mut. Ins. Co., 46 Minn. 198, 48 N. W. 772. Then the insurer broke his contract, and terminated the same, before the end of the time allotted to the insured in which to make the $90,000 of sales. Under the circumstances, it is wholly inequitable to consider the $90,000 at all, in determining the amount of such excess loss. During the ten months and seven days in which the policy ran, the insured made sales to the amount of $75,000, and this is the amount on which the one per cent. should be computed. Where one party commits a breach of such a contract, thereby terminating it, the other party may, as a general rule, recover on a quantum meruit which adopts the analogy of the contract as far as applicable, just and reasonable, but no further. In determining the excess loss for which Allen & Marvin should be indemnified, they should be allowed the amount of the $1,535, less 15 per cent. of the same, and less also the further sum of one per cent. of $75,000, which gives as the sum due $554.75, instead of the $404.75 allowed by the court below. But, as Allen & Marvin themselves raise no question about the amount allowed them, the order of the court below will not be disturbed.

3. The next claim is that of the defendant Brown, whose policy, similar in form, commenced to run October 18, 1894, and had run ten months and twenty-two days when the insurer failed. During this time Brown had suffered losses, but, after deducting 15 per cent. of the same, the balance did not amount to one per cent. of his sales during the same period of time; so that he is not entitled to recover for such losses, unless he can include with them subsequent losses occurring during the balance of the year for which his policy was issued. This he contends he is entitled to do, at least as against the fund in the hands of the insurance commissioner.

G. S. 1894, § 3332, requires such an insurance company as this to deposit with that officer securities aggregating in value $100,000, "in

trust for the benefit of all policy holders." Counsel contends that, as to this fund, Brown might treat the insurance company as a going concern until his policy expired. It is undoubtedly true that an insurance company which is not insolvent cannot lie down, abdicate its functions, and thereby escape future liability on its existing contracts. But when it is insolvent it is its duty to lie down and make an assignment, as it has done in this case; and, having done so, its funds belong to its creditors as their claims then exist. If, after such assignment, insurance risks are to be longer carried, they must in fact be carried by the creditors, not by the insurance company, which has become wholly irresponsible. But the court has no right to compel the creditors to continue the insurance business, or to surrender up for that purpose the funds on hand. And it is wholly immaterial whether those funds are in the hands of the assignee in insolvency, or in the hands of the insurance commissioner. They are in each case equally the funds of the creditors. The court did not err in allowing Brown nothing but the balance of the premium paid and unearned at the time of the assignment.

4. The next claim is that of the Detroit Copper & Brass Rolling Mills, whose policy, issued for a year, had run but ten months and twenty-six days at the time of the assignment. It had suffered no loss during this time, and the court allowed its claim for the unearned premium for the balance of the time. We cannot hold that, as urged by its counsel, this policy holder had a right to elect to rescind the contract and recover back the whole premium after the insurer had partly performed the contract by incurring risk on the policy for more than ten months. The order of the court as to this claim should be affirmed.

5. The next claim is that of the Acme Worsted Company. As to it, it is stipulated:

"That a policy was issued to it, similar to that mentioned in the complaint, on September 1, 1894, running for one' year, and that it suffered a net loss, within the terms of said policy, after deducting all sums provided for, in the sum of $100, and that no final proof of loss was ever made to the company or its assignees, but due notices of all losses were given to the company as they occurred."

The policy in question provides that within ten days after receiving notice of any loss the insured shall notify the insurer thereof. It further provides:

"The final proof of loss shall be made to said first party, at home office of the company, within thirty (30) days after the expiration of this bond [policy]   *   *   *   And it is understood and agreed that all claims under this bond are forever barred unless such final proof of loss shall be made and forwarded to said first party within thirty (30) days after the expiration of this bond [policy]."

It will be observed that the policy of this claimant ran the full year, which expired nine days before the assignment, while the time to file such final proof of loss did not expire until 21 days after the assignment.

The question thus presented is whether the failure of the worsted company to make such final proof precludes it from participating in the distribution of the assets.   We are of the opinion that it does not. The insured had a right to consider the insolvency and assignment of the insurer a breach of the contract on its part.   At the time of that breach the insured was not itself in default.   Although the year had run before any breach on the part of the insurer, still the contract remained executory on both sides.   The insured, to perform on its part, must furnish the proof of loss; and the insurer, to perform on its part, must pay the loss.   Perhaps the insured was still entitled to perform fully, and bring an action against the insolvent insurer for the full amount of the loss.   But as against the assignee and the sequestered assets, including those in the hands of the insurance commissioner, it is only entitled to recover on a quantum meruit for what it had performed up to the time of the assignment.

When the assignment is made, the day of liquidation has arrived, whether the contract is fully or only partially performed.   As neither the assignee nor the insolvent can ever perform fully on his part, he is not in a position to demand further performance from the other party.   Where it is for the benefit of the insolvent estate that the assignee fully perform, he may give the other party notice that he will do so, and insist on performance by such other party.   See Seibert v. Minneapolis & St. L. Ry. Co., 58 Minn. 53, 59 N. W. 879.   Thus, where goods sold on credit are to be delivered in instalments, and after part are delivered the buyer becomes insolvent, the seller may refuse to deliver the balance of the goods until the price (not yet due) of those already delivered, and the price of the balance to be delivered, are all tendered to him.   Leake, Cont. 656; Benjamin, Sales (6th Ed.) p. 738, § 759a.   But it is not for the benefit of the insolvent estate to

adopt and perform the contract here in question, and the assignee has not offered to do so. Then, as before stated, the worsted company is only entitled to recover on a quantum meruit for a breach of the contract. But the measure of its damages is substantially the same as if it had fully performed by furnishing the final proof of loss before the assignment. The difference is a merely nominal sum, and we will not reverse the order of the lower court for such difference. The rule de minimis must be applied. Singer Mnfg. Co. v. Potts, 59 Minn. 240, 61 N. W. 23; Palmer v. Degan, 58 Minn. 505, 60 N. W. 342.

6. There is nothing in the point that the policy holders are not entitled to participate in the funds in the hands of the insurance commissioner on their claims for unearned premiums.

This disposes of the case, and the orders appealed from are all affirmed.