November 7, 1910.

———————o———————

4997.

(Court of Appeal, Parish of Orleans).

## JOHN T. MICHEL, SECRETARY OF STATE vs. SOUTHERN INSURANCE COMPANY.

## In re Intervention of Tyler Canning & Packing Company.

1. Contracts or policies of insurance are not cancelled by the insolvency of the Insurance Company and consequent forfeiture of its charter; Civil Code 1901-2130, but such insolvency and forfeiture of charter constituted an active breach of the contract on the part of the company.

   Civil Code, 1931-1932.

2. The assured cannot demand a specific performance of the contract, but can only demand the damages he may suffer by reason of the breach.

   Civil Code 1926-1927.

3. Where the risk is one against fire and no loss occurs before the distribution of the assets, the measure of the damages suffered by the assured is the amount of the premium remaining unearned.

4. Where a loss occurs under the policy in time to be proved before the final distribution of the assets, the measure of the damages suffered by the assured is the amount which he would have re-

ceived had the company continued to be a going and solvent concern.

Appeal from the Civil District Court, Division "D."

**Foster, Milling, Brian, Lemle & Saal,** attorneys for appellee.

Woodville & Woodville, attorneys for appellant.

ST. PAUL, J.—Defendant corporation was a stock company organized under the laws of this State, and prior to January 21, 1909, was engaged in the business of underwriting fire risks.

On that day plaintiff, who is **ex officio** Commissioner of Insurance, applied to the court a qua to appoint a receiver for the defendant, alleging as grounds for the application, failure of defendant to comply with certain provisions of the insurance laws and his belief that defendant was insolvent.

This application was not opposed by defendant, but on the contrary, it appeared at once confessing the truth of plaintiff's allegations and consenting that the relief prayed for should be granted.

Thereupon a receiver was appointed "to take possession of the property and effects of said company and settle its affairs, subject to such rules or orders as the court may from time to time prescribe, according to the course of proceedings in equity."

In May, 1908, defendant had issued a policy (New York Standerd Form) covering for one year the property of intervenor, a resident of Tyler, Texas; and during the night of January 21st aforesaid, some twelve or fifteen hours after the appointment of the receiver, but before any knowledge thereof had reached intervenor, the property covered by said policy was destroyed by fire.

Intervenor, alleging these facts, sought to recover of the receiver the amount of said loss, but was met by an exception of no cause of action, which was sustained by the district judge. From that ruling intervenor prosecutes this appeal.

As ground of exception the receiver contends that the above stated order of court operated a forfeiture of defendant's charter and that the effect thereof was to cancel at once all outstanding policies under which no losses had occurred.

A careful reading of the statute regulating insurance companies (Act 105 of 1898), leads us to the conclusion that the appointement of a receiver to an insurance company at the suit of the Secretary of State, operates an immediate forfeiture of its charter.

Section 8 of the Statute provides under what circumstances such company shall be deemed insolvent, and under Sections 9, 10 and 14, it is only when all efforts to restore the corporation to a solvent condition have proved unavailing that the Secretary of State is authorized to demand the appointment of a receiver; the stockholders must have been informed of the insolvent condition and refused to remedy it before he can act. Their refusal under such circumstances is, in effect, a consent to the dissolution of the corporation.

We are not of opinion, however, that the forfeiture of defendant's charter had the effect of cancelling its outstanding policies.

Counsel for the receiver, in support of their contention, cites from Mr. Cooley's "Briefs on Insurance" Vol. 3, pages 2810 and 2811, as follows:

"It is well settled that an adjudication of insolvency or the appointment of a receiver for an insolvent company operates as a cancellation of all outstanding policies," citing, **Commonwealth of Massa-**

chusetts vs. Massachusetts Mutual Fire Insurance Co., 119 Mass. 45.

> Taylor vs. North Star Mutual Insurance Co., 46 Min. 193 (48 N. W. 772). In re Minneapolis Mutual Fire Insurance Company, 49 Minn. 291 (51 N. W. 921); Doane vs Mellville Mutual Fire and Marine Insurance Co., 43 N. J., Equity 522 (11 Atlantic 739); Davis vs. Shearer, 90 Wiis. 250 (62 N. W. 1050); Boyd vs. Mutual Fire Ass'n., 116 Wis. 165 (90 N. W. 1086, 61 L. R. A. 918); Reliance Lumber Co. vs. Brown, 4 Ind., App. 92 (30 N. E. 625); In addition to those cases counsel for receiver also cites Dean's Appeal, 98 Pa. 101; Carr vs. Haminton, 129 U. S. 254; Grey vs. Reynolds (New Jersey), 37 Atlantic 461; South vs. National Credit Insurance Co. (Minn), 68 N. W. 28; Warner vs. Dellbridge (Michigan), 68 N. W. 283; Todd vs. German American Insurance Co. (Ga), 59 S. E. 94.

An examination of the authorities cited by Mr. Cooley leads us to the conclusion that they do not warrant the broad language of his text. In all the cases cited by him the companies were **mutual** associations, and they are based on the reasoning in **Commonwealth vs. Insurance Co.**, 119 Mass. 45. There the Court said:

> "Each holder of a policy is a member of the corporation and as such has notice of and is affected by the injunction. It is an incident of the peculiar contract and relation which each member of a mutual insurance company enters into with the other members that the injunction and judicial sequestration of all the property of the corporation terminates its liability for future losses."

That is to say, every member of a corporation is bound

by the decree, dissolving its charter. But in Mutual Companies the contract of insurance is the charter of the company. Hence a decree dissolving the charter, is binding on all the members of the corporation, and dissolves the only contract which obligates them to each other.

In that case it was not even a question, a paying loss is actually occurring after the appointment of a receiver, but whether the receiver should hold the assets (constituting in part of the premium notes) in order to meet possible future losses under unexpired policies or proceed at once to distribute those assets, and return the premium notes of the members.

This case seems to have been accepted generally as authority for the proposition that the appointment of a receiver to a Mutual Company cancels all outstanding policies; but it has not been accepted universally

> See **Manlove vs. Com. Mutual Fire Insurance Co., 47 Kansas, 309 (27 Pac. 979),** and especially **Attorney-General vs. Guardian Mutual Life Insurance Co., 82 N. Y. 338.**

It has also been quoted as authority in several cases of policies in stock-companies, see the four cases last cited by counsel for the receiver. But nothing in the reasoning of the case shows that it has the slightest application to stock-companies.

But the doctrine of that case was rejected as wholly inapplicable to stock-companies in a well considered case from New Hampshire. See **Insurance Company vs. Peoples Fire Insurance Company, 68 N. H. 51 (44 Atlantic 82).** And so it appears to us. The holder of a policy in a stock-company is not a member of the corporation, having notice of and bound by the decree of dissolution. Nor is the charter of the corporation the contract of insurance in such cases; but that contract is an instrument entirely distinct and separate from the charter and in no way affected by the decree dissolving the latter.

**Dean's Appeal, 98 Pa. 101,** is also cited as authority for the proposition that the appointment of a receiver cancels all policies, and seems to support the doctrine. But in that case the policy holder had been notified of the appointment and directed to send in his policy for cancellation, more than six months before any loss had occurred. .

Moreover the case is decided on the principle of opposing a fiction of law, to a fact, instead of opposing the fact to the fiction, as was done in New York. In theory the assets of the defunct corporation are to be distributed at the moment of dissolution. In practice this is impossible. The Pennsylvania Court, distributed the assets of the corporation according to the rights of the parties as they were at the time when theoretically they should have been distributed; the Courts of New York distributed them in accordance with the rights of the parties at the time of the actual distribution. We refer to the case of **People's Insurance Company vs. Security Life Insurance Co., 78 N. Y. 114,** to which we shall refer again hereafter.

In other words the Pennsylvania Court **assumed** that the policy was **cancelled** by the appointment of a receiver, and argued that the rights of creditors were fixed at that moment. But there is not one line of reasoning why the policies were cancelled by the appointment of a receiver.

On the other hand the Supreme Court of New York, in **78 N. Y. 114-125,** has laid down what we consider the true doctrine applicable to all cases alike, and doing equal justice at all times. That doctrine amounts substantially to this, that a policy of insurance is not cancelled by the insolvency of the underwriter, but that the latter undertakes to continue solvent during the term of the policy; hence his becoming insolvent is a breach of the contract. That the policy holder cannot insist on a specific performance of the contract, since it would be inconvenient and impracticable to hold the assets of the corporation until

— 29 —

the expiration of all the policies; hence the policy holder can only claim damages for the breach of the contract. That these damages are provable in due course like any other claim. That in the absence of loss under the policy the only damages suffered are, in fire policies the amount of unearned premiums, and in life policies the amount of "reserve." Hence where no loss occurs before the delay in which to prove up claims, the damage is the amount of such unearned premium or reserve, but where a loss occurs prior to said time, the policy-holder may prove the loss and his damages are the amount he would have received had the company continued solvent.

This rule has been applied to Mutual Companies as well as to Stock Companies, **82 N. Y. 338. Attorney-General vs. Guardian Mutual Insurance Co.** In our opinion it is absolutely fair and equitable to all parties, results in no inconvenience whatsoever to anyone and is consistent with all the provisions of our Civil Code.

Nothing in **82 N. Y. 195, Attorney-General vs. North American Life Insurance Co.**, conflicts with this rule, and the case in **129 U. S. 254**, has no application, nothing but a question of compensation being involved.

It is, therefore, ordered that the judgment appealed from be reversed, and it is now ordered that the exception of no cause of action filed by the receiver be overruled, and that this case be remanded to the court a qua to be heard and disposed of in due course and according to law.

May 16, 1910.

Godchaux, J., recused.

Rehearing granted, June 22, 1910.

### ON REHEARING.

1. The obligation of a contract is not impaired by the insolvency of the obligor. Hence the force of agreements made by a

corporation continues undiminished notwithstanding the insolvency of such corporation or the forfeiture of its charter.

2. A policy of insurance is a conditional obligation and under the Louisiana Code the happening of the condition relates back to the making of the contract. Hence when a loss occurs the policy holder is to be taken and held as having been a creditor for the amount of his loss from the very time when the policy first issued.

ST. PAUL, J.—On reconsideration we have concluded to adhere to our former decree.

We cannot concede that the insolvency of a corporation can have an effect different from, or more far reaching than, that of an individual, or that such insolvency or the forfeiture of its charter can impair the obligation of its contracts or any feature thereof.

See **Weber vs. Belltran, 47 An. 195.**

The insolvency of the obligor is not a resultory or dissolving condition, either express or implied, of the contracts made by him, and hence **Civil Code, Article 2047,** has no application to the case at bar.

Appellee urges that our former opinion is based largely on the ruling in **Peoples vs. Security Insurance Co., 78 N. Y. 114,** which has in effect been overruled by **People vs. Commercial Insurance Co., 154 N. Y. 95.** But an examination of our opinion shows that it was not based exclusively on the case in **78 N. Y.**

Moreover when we examine the case in **154 N. Y.,** we find that case based chiefly on **Dean's Appeal 98 Pa. 101,** also noticed in the course of our former opinion.

Besides what we then said of that case (Dean's Appeal) we may add that, however, applicable in other jurisdictions, it is not at all so in this. For one of the underlying principles which that case rests is that the rights of policy holders are fixed at the time the forfeiture of its charter is decreed, and cannot be changed by the subsequent happening of a loss.

But a policy of insurance is a conditional obligation, and the happening of the condition, i. e., the loss, has under our Code, a retrospective effect under which the right of the policy holder accrues as of date when the policy was issued.

> Civil Code 2041; Succession of Mosemann, 38 An. 219.

Accordingly the happenings of the condition, i. e., the loss, even though subsequent to the forfeiture of defendant's charter, made the intervenor a creditor for the amount of his loss, as of date prior to such forfeiture.

We think the conclusions heretofore reached by us are correct.

Former decree reinstated.

Godchaux, J., recused.

November 7, 1910.

Writ granted by Supreme Court, January 3, 1911.