STATE ex rel. ANTON SCHAEFER v. MINNESOTA TITLE INSURANCE & TRUST COMPANY.[1]

June 19, 1908.

Nos. 15,484, 15,485—(11, 12).

**Title Insurance—Return of Premiums.**

The holder of a policy of insurance issued by a real estate title insurance company is, upon a cancellation or annulment of the policy by a judicial decree declaring the company insolvent and appointing a receiver to wind up its affairs, entitled to a return of a proportionate part of the premium paid therefor, measured by the time elapsing between the date of the policy and the date on which the company was so adjudged insolvent.

**Same.**

The policy holder is not entitled to the return of that part of the premium which the application for insurance stipulated might be retained by the company for its services in investigating the title insured.

In the above entitled action in the district court for Hennepin county William Bros Boiler & Manufacturing Company filed a claim for $45, for unearned premium on a title insurance policy. The facts were stipulated. The matter was tried before Frederick V. Brown, J., who made findings and ordered judgment in favor of claimant in the sum of $34.88. From this order, both parties appealed. Affirmed.

*Jay W. Crane*, for claimant.
*Belden, Jamison & Shearer*, for defendant.

Almost the only point of contact of this case with other kinds of insurance is the idea of indemnity. It is like fire and accident and

[1] Reported in 116 N. W. 944.

casualty insurance only in this idea of indemnity. It is totally unlike life insurance. But the most essential difference between this and all other forms of insurance is this: All other insurance is against a contingency or risk not now in being, but to happen, or which may happen in the future. Fire insurance insures against loss or damage by fire to happen; accident insurance insures against loss or injury by accident to happen; life insurance insures against death to happen; casualty insurance insures against loss or damage by injury to happen. Such policies only mature or become claims upon the happening of causes or facts operating in future alone. When such policies are issued, it is positively known that no claim exists which may be made at a future time, without the operation of a future act or cause. When such policies are issued, both contracting parties are interested in preventing by the exercise of the utmost care the intervention of any cause which may make the policy a claim. The policy says: "Neither assent nor assignment, nor anything contained in this policy shall be construed as insurance against defects or incumbrances created subsequent to the date hereof. No loss shall be recovered under this policy unless the action be commenced within one year after eviction or final judgment as herein stated; nor shall such recovery be had unless the insured and those claiming under him as aforesaid shall have been actually evicted under an adverse title not mentioned or referred to in the above Schedule B, or, unless there has been a final judgment upon a lien or incumbrance of claim of title not mentioned or referred to in said Schedule B, under which the title of the insured may be divested; and no liability shall exist or arise hereunder unless the insured shall have given notice of the action or proceeding in which such eviction or final judgment arises as provided in section 1 aforesaid." Then follows the basis of settlement in such cases, which is that of pure indemnity for loss or damage occasioned by the defects existing at the date of the policy.

The defendant company issued two forms of policy, a mortgagee form, not necessary to be considered here, and an owner's policy by which the company agreed: "That it will, for the period of twenty five years from the date hereof, indemnify, keep harmless and insure Wm. Bros Boiler & Manufacturing Company, and all persons claiming the estate and interest hereinafter mentioned under them by de-

scent or will, from all loss or damage not exceeding $7,000, which the said insured shall, during said period of twenty five years, sustain by reason of defects of the title of the insured to the real estate or interest described in Schedule A hereto annexed, or by reason of liens or incumbrances affecting the same at the date hereof, excepting only such as are set forth in Schedule B; subject to the conditions and stipulations hereto annexed and together with said schedules made a part of this policy." Schedule A, above referred to, states description of property to be insured. Schedule B states the conditions and things not insured against, as follows: (1) All interest or title of present occupants of said premises or any part thereof, whether possessory or otherwise; (2) taxes and assessments not yet payable; (3) rights of way for street and alley purposes; (4) variation of lines and deficiency in quantity of ground. (5) Statutory liens, if any, hereafter filed. The above constitute the most ordinary defects in titles. What, then, are insured against? Principally these: (1) Mortgage incumbrances filed and unfiled; (2) outstanding, unrecorded contracts or deeds; (3) forged instruments in chain of title; (4) invalid instruments in chain of title made by minors or insane persons; (5) instruments in chain of title purporting to be executed by single persons as grantors who were at the time married.

The answer states (admitted to be true) that since the organization of the company, April, 1886, to the date of the receivership, 19,538 policies, aggregating $40,520,746.75 of insurance, have been issued on titles; that during that time the annual loss from defects insured against has been less than $270, or less than $5,670 in the twenty one years, or .00014 per cent., which is almost a negligible quantity. So much for the experience and status of this, the oldest title insurance company in the west, and the only one anywhere, so far as our research has been able to find, in which the questions at bar have come before a court for determination.

No claim is made by plaintiff of any "defect of title," or "any liens or incumbrances affecting the same" at the date of the policy, which are the only two things insured against. It claims only the right to the return of the unearned premium and to be considered a creditor of the estate to that extent. This is claimed because it is averred that the policy constituted a continuing contract of insurance for its en-

tire term of twenty five years, and that only a small part of the term of insurance has expired; that the receivership operated to cancel the policy (and all policies) by which claimant has been deprived of the protection of the insurance for the remainder of the twenty five years. But while the two risks insured against are defects of title, and liens or incumbrances, it is neither their existence nor their discovery that makes the company liable on its policy. It is "loss or damage * * * which the insured shall, during said period of twenty five years, sustain" by reason thereof, which creates the liability.

An adverse claim, which would prevail if asserted, could create no liability on a policy whether known or not known, if never asserted.

Two things, then, must exist or occur before an action on the policy could be maintained: (1) A defect or incumbrance; (2) loss or damage resulting therefrom. Neither have occurred in this case, and therefore no damage can be awarded based upon the two risks insured against in the policy.

If "loss or damage" has been sustained by claimant, it must be for breach of contract—not on the policy. It must be because claimant bought and paid for, for twenty five years, a continuing contract of indemnity against loss or damage resulting from said "defects of title" or "incumbrances" on title, and because the defendant company has by the receivership disabled itself from full performance. But continuing indemnity means nothing more than this: If defects of title, or incumbrances on title existed at the date of the policy, which within twenty five years result in loss or damage, the company becomes liable. Defects or incumbrances might have existed, without damage or loss—result, no liability. Damage or loss might have occurred without any defects or incumbrances—result, no liability. If, then, in this particular case an absolutely clear title could be established— one without "defect" or "incumbrance," insured against, the defendant's contract would not have been broken in fact. It would thus be possible to remove in court an essential element, which, by the policy, must exist and precede loss or damage, before a recovery could be had on the policy. So, too, in such case there could be no recovery for breach of contract, as for unearned premium, because the premium would then have been all earned at the issuance of the policy.

Whether under the stipulation that the company will, at its own

cost, defend the insured in all actions of ejectment founded upon a claim of title or incumbrance prior in date to the policy and not excepted in terms, the company must defend, or may at its election defend, may be unimportant, for we are inclined to think it might well be considered an inducement or consideration of the contract, in which case it is a more or less valuable right of which the claimant has been deprived by the insolvency. This, then, must be the principal thing of which claimant has been deprived by the breach. It is the loss of this which the court has sought to measure in the allowance of damages for unearned premium.

Two methods of measuring damages suggest themselves. One, damages for breach of a contract which has resulted in no substantial damage, in which case nominal damages would be awarded; the other, the method adopted by the trial court.

The policies were all canceled by the adjudication of insolvency. Taylor v. North Star Mut. Ins. Co., 46 Minn. 198; In re Minneapolis Mut. Fire Ins. Co., 49 Minn. 291; Smith v. National Credit Ins. Co., 65 Minn. 283. The premium paid by claimant, $45, is supposed to be the mathematical equivalent of the risk assumed and labor done by the company.

It is common knowledge that this title insurance company made, through an expert title attorney, exhaustive examination of every title before insuring it and that every title insured was approved by him before policy was issued; every matter of record, not regular, was made so before a policy was issued. It is not claiming too much, therefore, to say that little, if any, risk in the title insured was left to assume when the policy was issued. In this view of the case nominal damages is all that could properly be awarded. The damages awarded by the court were apparently not made on the basis of a possibly defective title, nor was it attempted to measure the damage sustained. It was, rather, decided upon the analogy of fire insurance, that by disabling itself from performing, the company must be considered in law as refusing performance and that the other party may recover back the consideration of the contract, less the part thereof which has been earned. In other words, the company having wrongfully rescinded the contract without claimant's consent, he may recover the consideration that he paid.

The basis adopted by the lower court for ascertaining the unearned premium is not accurate. He used the analogy of a fire insurance policy where the risk is susceptible of being exactly pro-rated according to the time the insurance lasts. In fire insurance the risk is the same the last day of the term as the first or any intermediate day; so it is for any month or any week or any year. On a title policy the maximum risk is on the day the policy is written and diminishes rapidly with lapse of time. In five years all irregularities of foreclosure and such minor defects are by statute wiped out; from that time for ten more years there is some risk, but it is slight; when fifteen years have expired, if possession has been continuous, hostile and ·adverse, the risk is entirely gone, except as to incompetents. Hence, it would seem that even in case claimant is entitled to a return of unearned premium, he is not entitled to pro-rate it for twenty five years upon the basis of a fire policy. Some other more equitable basis should be found, if the right exists at all.

BROWN, J.

The facts in this case, as disclosed by a stipulation of the parties, are as follows: The Minnesota Title Insurance & Trust Company was organized under the laws of the state for the purpose, among other things, of insuring titles to real property and issuing policies therefor. In February, 1907, claimant applied to the company for a policy insuring the title to certain property it then owned, upon which, after due investigation, a policy was issued in due form insuring the title for the period of twenty five years from its date, and claimant paid the premium charged therefor, amounting to $45. Thereafter, on March 26, 1907, about two months after the issuance of the policy, the insurance company, in proceedings instituted by the attorney general, was duly adjudged insolvent, and a receiver appointed to wind up its affairs. In June, 1907, claimant filed with the receiver as a demand against the company a claim for the return of the premium so paid. The question whether the claim should be allowed came up for hearing before the court below, where judgment was ordered for claimant for the unearned part of the premium less ten dollars, which the court held the company was entitled to retain for services render-

ed in the examination of the title preparatory to the issuance of the policy. Both parties appealed.

We have found no case involving the right of a policy holder in an insurance company like the one before us, an insurer of title to real property, to a return of the unearned part of the premium, where before the expiration of the policy the insurance company became insolvent and retired from business. The question is entirely new and one of first impressions. We discover no reason, however, for not applying the rule applicable to the, in a measure, analogous case of a fire insurance company. It has been held in respect to such companies that the adjudication of insolvency and the appointment of a receiver to close the affairs of the company in effect annul the policy and entitle the holder thereof to a return of the unearned premium. Taylor v. North Star Mut. Ins. Co., 46 Minn. 198, 48 N. W. 772; In re Minneapolis Mut. Fire Ins. Co., 49 Minn. 291, 51 N. W. 921; Smith v. National Credit Ins. Co., 65 Minn. 283, 68 N. W. 28, 33 L. R. A. 511; McCallum v. National Credit Ins. Co., 84 Minn. 134, 86 N. W. 892.

In the case of fire, hail, storm, or other like insurance, the indemnity is against loss which may occur at some time in the future during the life of the policy, and the contract serves as a protection to the policy holder during that time. In the title insurance the situation is the same, save that the loss suffered must arise from some defect in the title existing at the time of or before the policy was issued, and is subsequently successfully asserted to the damage of the policy holder. So that, substantially, the indemnity in either case is against future loss or damage; the loss arising in the one case from the happening of a future event, and in the other from a loss subsequent to the date of the policy by reason of the successful assertion of an adverse title or interest in the land insured which existed at the time or before the contract was made. That a loss of this kind might arise in the future, though the chances in this class of insurance are strongly against such a result, brings the case, by analogy, within the rule applicable to other insurance contracts, and the trial court was correct in applying it. The difference in probable or possible loss in the two classes of insurance is practically one of degree only; the prob-

ability of loss in this class being materially less than in the case of fire insurance.

We are also of opinion, and so hold, that the court adopted the correct rule of damages. The court held that the claimant was entitled to the return of the premium less a proportionate · amount, which it may be said the company earned up to the time of its insolvency, and the sum of ten dollars, allowed for the examination of the title before issuing the policy. · The allowance of this item is fully justified by the terms of the contract, by which claimant agreed to pay for the insurance the sum of forty five dollars, with the understanding that ten dollars thereof, which was paid at the time of the application, should be retained by the company, whether the policy was issued or not, as compensation for services rendered in the investigation of the title. The company fully performed this service. If a policy had not been issued, the applicant could not demand its return; and if under such circumstances it could be retained by the company, the fact that ·it issued the policy should not forfeit its right to retain it for the same service.

The court adopted the rule of time in measuring the earned portion of the premium. It is urged that this was incorrect, and that some other more equitable rule should have been applied. We are unable to concur in this contention. While it is true that the risk of loss under a contract of this kind, unlike other insurance diminishes with the lapse of time, and as the end of the period covered by the policy approaches there is less and less likelihood of loss, yet to attempt to say from this basis what proportion of the premium has been earned would involve the matter in arbitrary speculation and bring up at an exceedingly unsatisfactory result, since no certain or definite rule could be evolved from that process of reasoning; whereas, on the other hand, to apportion the time during which the policy was in force to that of the unexpired period leaves no room for speculation or conjecture, does not involve an effort to measure the value of the possibility or probability of a loss, and fixes a rule which, if not wholly satisfactory, is at least definite and certain.

Our conclusions, therefore, are in harmony with those reached by the learned trial judge and his order in the premises is affirmed.

Affirmed.