

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 9, 1948

Hen. J. P. Gibbs, Commissioner
Casualty Insurance Division
Board of Insurance Commissioners
Austin 14, Texas

Attention:  Hen. Ned Price, Director
            Title Section.

                    Opinion No. V-517

                    Re:  Authority of title insurance
                         companies to issue a binder
                         obligating them to issue, at
                         the option of the insured, a
                         mortgagee's title policy in-
                         suring the lien for advances
                         for construction prior to the
                         completion of the improvements;
                         and whether an additional rate
                         should be promulgated for the
                         issuance of such a binder.

Dear Sir:

        Your letter of December 2 submits for our con-
sideration a form of binder proposed for the use of title
insurance companies, designed to obligate the title in-
surance company to issue a mortgagee's title policy. Such
policy would insure the lien for construction advances,
and would be issued upon completion of the improvements,
or at any time prior thereto during the course of con-
struction, at the option of the insured. You ask whether
the additional risk assumed by the binder is within the
corporate powers of title insurance companies operating
under Article 1302a, V. C. S. You also request our opin-
ion as to the necessity of an additional premium or higher
rate in view of the additional protection afforded by the
binder.

        You indicate that a question is raised, as to
the authority of title insurance companies to assume the
risks contemplated by the binder in view of the protect-
ion afforded thereby being "to a limited degree somewhat

similar to a completion bond". You advise that "a number of title company officials have expressed doubt as to the validity of the binder, contending that the protection afforded by the binder is in effect a suretyship rather than a title guaranty coverage". We have also been furnished comprehensive briefs presenting some objections to such a binder. As to your second question, you observe that there might be a question of unfair discrimination if a title insurance company should issue the binder and the subsequent policy at the same rate charged for a policy without the binder.

Neither the policy in question nor the binder is a suretyship contract, but they definitely constitute an insurance contract, being an agreement to indemnify the insured against loss rather than a contract to perform any of the obligations of any third parties. The insuring agreement in the standard form policy promulgated by the Board, which the title insurer would bind itself to issue, provides that the company will pay to the assured, as interest may appear,

> "all loss or damage not exceeding ___
> _____ dollars which the assured or
> the executor, administrators, successors
> or assigns of the assured may sustain or
> suffer by reason of the failure of, defects
> in, encumbrances upon or liens or charges
> against the title of the mortgagors or grant-
> ors . . . existing at or prior to the date of
> this policy, including mechanic's and mater-
> ialmen's liens now having priority or now ex-
> isting but incomplete, which may hereafter be
> completed so as to gain priority, over the
> lien of the assured".

The binder simply obligates the insurance company to issue such a policy at a future date, in an amount equal to such advances, made up to that date under the lien indenture, as are approved by the insurer.

Whether or not the coverage contemplated and the obligations assumed by the title insurance company constitute "title insurance" is the primary question. If the coverage is other than title insurance, it would not fall under the control and supervision of the Board as to rules, regulations, forms of policies and underwriting contracts, and premiums therefor by virtue of Article 1302a, Section 3, nor would an insurance company

Hon. J. P. Gibbs, Page 3, V-517.

authorized solely to write title insurance be authorized to incur the obligations contained in the binder and the policy.

The statutory conception of title insurance is contained in Article 1302a, Section 1, Subsection (1), which authorize corporations created thereunder

> "to insure titles to lands or interests therein . . . and indemnify the owners of such lands, or the holders of interests in or liens on such lands, against loss or damage on account of encumbrances upon or defects in title to such lands or interests therein".

It is necessary, of course, in all cases that the insured have a title to, or lien on, the land upon which the improvements are to be made, as otherwise a title company would not have power under the above statute to issue it.

We have found no cases which decide the question presented, nor for that matter, which attempt to prescribe the limits beyond which insurance contracts cease to be "title insurance". In the brief submitted, we are referred to Trenton Potteries Company v. Title Guarantee & Trust Company, 68 N. E. 132, 134, 176 N.Y. 65; Mayers v. Van Schaick, Superintendent of Insurance, 197 N. E. 296, 297, 268 N. Y. 320; Foehrenbach v. German American Title & Trust Company, 217 Pa. 331, 66 A. 561, 12 L. R. A. (N. S.) 465, 118 Am. St. Rep. 916; State of Minnesota ex rel. Schaefer, Public Examiner v. Minnesota Title Insurance & Trust Company, 104 Minn. 447, 116 N.W. 944, 19 L. R. A. (N. S.) 639, 124 Am. St. Rep. 633; and Title Insurance & Trust Company v. City of Los Angeles, 214 Pac. 667, 61 Cal. App. 232. These cases merely discuss the nature of title insurance in passing upon other points. The language of those cases describes title insurance as assuming the risk of presently existing defects and encumbrances at the date of the policy or at the date of the closing of the title transfer. They negative an _intention_ to insure against, as title insurance, the risks of failure of title or encumbrances thereon having their inception subsequent to such dates. But the risk of the subsequent attaching of mechanic's and materialmen's liens is a risk of presently existing defects and encumbrances, since the basis of the priority of subsequently perfected mechanic's and materialmen's liens is

the theory that they relate back to the beginning of the improvement project. See Oriental Hotel Company v. Griffiths, 88 Tex. 574, 33 S. W. 652, 30 L. R. A. 765, 53 Am. St. Rep. 790; Sanguinett & Staats v. Colorado Salt Company, 150 S. W. 490; Guggenheim v. Dallas Plumbing Company, 59 S. W. (2d) 105; Sullivan v. Texas Briquette and Coal Company, 94 Tex. 541, 63 S. W. 307; D. June and Company v. Boke, 80 S. W. 402; Seymour Opera-House v. Therston, 45 S. W. 815; Dilworth & Green v. Ed Steves & Sons, 169 S. W. 630, error dismissed, 107 Tex. 73, 174 S. W. 279; Southern Building & Loan Association v. Bean, 49 S.W. 910; Fritz Meter Company v. Gabert, 41 S. W. (2d) 72; and Article 5459, V. C. S. At least, under all of these cases, the possibility of subsequently attaching mechanic's and materialmen's liens having priority over the lien for advancements is a presently existing defect or possibility of encumbrance apparent upon the face of the lien for advancements by reason of its very nature. The lender for improvements makes advances charged with notice of this incipient risk. The insurer is likewise charged with such notice and makes a decision to accept the risk upon the circumstances which exist at the time. It is true that the failure of priority may depend upon future acts of third parties over which it has no direct control, but such is true of the risk of a first lien mortgagee's policy without the prior issuance of a binder, as can be seen from the insuring clause above-quoted. The standard Texas title insurance contract so contemplates by its express language.

It appears, then, that the substantial objection to the binder, if the objection be sound, would also lodge against the issuance of any title insurance policy during the course of any construction.

It cannot be said that the risk of non-completion of improvements is not known to title insurance, as reflected by reported cases dealing with title insurance. The opinion in the case of Pennsylvania Company etc. v. Central Trust & Savings Company, 99 Atl. 910, describes a title insurance policy, as follows:

"The policy issued in this case is the form of an ordinary title insurance policy with appropriate provisions to cover loss or damage sustained by reason of non-completion of the premises".

In the case of Wheeler v. Real-Estate Title Insurance and Guaranty Company, 28 Atl. 849 (Pa.), the insurer assumed a risk identical in nature to the risk contemplated by the binder in this case. The policy was issued upon a mortgage during the progress of improvements on the mortgaged premises, there being the risk of the possibility of the perfection of mechanic's liens which would obtain priority over the mortgage and the resultant risk of a deficiency in the security for the loan. While the insurer declined to assume the risk of loss to the owner, because of unmarketability of the title, it did insure against actual losses by reason of such possible liens. The Court there recognized that such liens are such as have a present possibility.

We cannot say, therefore, that such a risk is beyond the corporate powers of a title insurance company, in connection with its insurance of titles and first liens, in the absence of express statutory prohibitions.

We feel that the binder would be construed similarly, in connection with the policy, as insuring only against those encumbrances that have their inception at or prior to the date of the binder. It is the usual practice that an insurance policy which closes a binder has as its inception date the inception of the binder. If there is doubt in this regard, the binder may be made more specific in that respect. We are not attempting to pass upon the sufficiency of the binder to prevent a broader coverage than contemplated, but confine our considerations to the legality of issuing the type of insurance contract which assumes the risk of loss due to attachment of subsequent mechanic's and materialmen's liens arising out of the improvements for which advances are made under a mortgage.

The statutory conception of title insurance indicated in Article 1302a contains no express limitations which would exclude the risk of subsequently attaching mechanic's and materialmen's liens. The regular first lien mortgagee's policy promulgated by the Board recognizes as an insurable risk the possibility of future perfection of such liens.

Finally, considerations suggested regarding either the legality or propriety of liens for improvements on a homestead would not affect the legality of insurance of such liens on other property. Even if insurance of such liens on homesteads is in fact illegal,

we could not say that the form is illegal merely because it might be used on such a subject.

You are, therefore, advised that the Board may promulgate or approve such a binder. We do not, of course, infer that the Board is required or compelled to do so.

Your second question, as to the propriety of fixing a higher rate of premium, where such a binder is issued, than the regular scheduled charge now in effect for mortgagee's title insurance appears to be a question for determination by the Board of Insurance Commissioners under the provisions of Section 3 of Article 1302a, which provides:

> "The Board of Insurance Commissioners shall have the right and it shall be its duty to fix and promulgate the rates to be charged by corporations created or operating hereunder for premiums on policies or certificates and underwriting contracts. The rate fixed by the Board shall be reasonable to the public and non-confiscatory to the company".

It appears to us that, if the Board of Insurance Commissioners in the proper way determines that the risk under the binder is sufficiently more hazardous than the normal risk of a mortgagee's policy, it is authorized by the statute to give all such risks a separate classification and a separate and higher rate. We cannot, of course, advise you as to the propriety of matters which are within your fact finding authority.

## SUMMARY

The Board of Insurance Commissioners is authorized to promulgate a binder form designed to obligate title insurers to issue, at the option of the insured, a first lien mortgagee's title policy insuring a lien for advances for construction prior

to the completion of the improvements. The Board may, by proper classification, promulgate the rate for insurance under such binder.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

Ned McDaniel
Assistant


APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL.

NMc:jmc